USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/24/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL YAZURLO,

                  Plaintiff,

-against-

BOARD OF EDUCATION OF THE CITY OF YONKERS, DR. NADER J. SAYEGH, and MIKE SPANO,

                  Defendant.

No. 17 Civ. 2027 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Michael Yazurlo ("Plaintiff") brings this action against Defendants Board of Education of the City of Yonkers ("Board"), Dr. Nader J. Sayegh ("Sayegh"), and Mike Spano ("Spano") in his first amended complaint. ("Complaint," ECF No. 19.) Plaintiff's claims are for breach of contract against Defendants Board and Sayegh, slander per se against Defendants Sayegh and Spano, tortious interference with a contract against Defendant Spano, and national origin discrimination under 42 U.S.C. § 1983 against Defendant Spano. Defendants move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). Defendant Spano and Defendants Board and Sayegh bring separate motions. Both will be addressed by this opinion.

    For the following reasons, Defendant Spano's motion is GRANTED in part and DENIED in part. Defendants Board's and Sayegh's motion is DENIED.

## BACKGROUND

    The following facts are taken from Plaintiff's Complaint and are accepted as true for the purposes of these motions.

    On May 21, 2014, Plaintiff entered into a contract with Defendant Board ("Agreement"). (Compl. ¶ 43.) This Agreement set the following terms for Plaintiff's employment with

1

Defendant Board:

> 1) [T]he [A]greement was to commence on May 22, 2014, and was supposed to end at midnight on June 30, 2016, unless further extended or sooner terminated; 2) plaintiffs [sic] salary was set at an annual rate of . . . [$]199,000.00) Dollars; 3) the Agreement was subject to dismissal if the BOE establishes that there is good and just cause. No discharge shall be effective until written charges have been served upon the plaintiff and plaintiff has been afforded the opportunity for a fair hearing before a BOE designated hearing officer after at least Twenty (20) days notice in writing. If a discharge from employment under this provision is found by a court to be wrongful, the plaintiff shall be entitled to, and shall be limited to, any damages for breach of this Agreement established by the court; 4) in the event that plaintiff shall voluntarily resign from his position, plaintiff shall provide the BOE with prior notice of at least Sixty (60) days.

(*Id.* ¶ 44.)

Plaintiff started work as superintendent for Defendant Board on May 22, 2014, and he "abided by and performed all the terms of the Agreement and at no time did he breach any of the Agreement's terms and conditions." (*Id.* ¶¶ 46, 48.) On November 17, 2015, during the term of the Agreement, the Yonkers police commissioner, under the direction of Defendant Spano (Mayor of Yonkers), informed Plaintiff that there was an open investigation into orders for pornographic films that had been placed through the cable box in Plaintiff's office. (*Id.* ¶¶ 49–51.) Plaintiff denied ordering the films, and the police proceeded with their investigation which included removing the cable box from Plaintiff's office; Plaintiff fully cooperated. (*Id.* ¶¶ 53–60.) That same day, on November 17, Plaintiff informed Defendant Sayegh, President of the Board, of the investigation. (*Id.* ¶¶ 9, 61.)

On November 20, 2015, Plaintiff was summoned to a meeting at Defendant Spano's office. (*Id.* ¶¶ 63–64.) Defendants Spano and Sayegh, along with a city police officer and others, attended the meeting. (*Id.* ¶ 66.) At this meeting, Defendants Spano and Sayegh held up a paper and told Plaintiff that it was a bill documenting the purchases of the pornographic films, but they refused to allow Plaintiff to review the paper. (*Id.* ¶¶ 67–68.) Defendant Spano also,

2

"knowing the falsity of is statement . . . [said] 'I think you did it,' " and "falsely and willfully accused the plaintiff of viewing the pornographic material." (*Id.* ¶ 66.) After falsely accusing Plaintiff "with no actual proof," Defendants Spano and Sayegh told Plaintiff that if he did not resign immediately, they would publish the accusations. (*Id.* ¶¶ 70–72.) Plaintiff agreed to resign, to the "constructive discharge," in order to keep the investigation private because he was concerned that the public announcement of the investigation would distress his family, cause him personal stress, and damage his future job prospects. (*Id.* ¶¶ 74–77.)

Despite Plaintiff's resignation, Plaintiff alleges that Defendants Spano and Sayegh told the media, without proof, that "plaintiff had watched . . . [$2,300] worth of pornography on his computer at work and used a district credit card," which Plaintiff alleges demonstrates "that that was their intent all along." (*Id.* ¶¶ 78–79.) Various media outlets published these allegations, causing Plaintiff to lose a job offer as a result, and leading to ongoing difficulties finding other employment. (*Id.* ¶¶ 79–87.) After Plaintiff's resignation, Defendant Spano appointed Edwin Quezada, a person "of Hispanic National Origin," as Plaintiff's replacement, even though Quezada was less experienced and qualified than Plaintiff. (*Id.* ¶ 89, 90–91.) According to Plaintiff, Defendant Spano removed him, a person of "Italian Origin" from his positon so that he could appoint "a member of the Hispanic community" "to appeal to the Hispanic voting population." (*Id.* ¶¶ 94–97, 101.)

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). A claim is facially plausible

3

when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is " 'not bound to accept as true a legal conclusion couched as a factual allegation,' " or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662. A court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to Rule 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

## DISCUSSION[1]

### I. Breach of contract

---

[1] All relevant events occurred in New York, and no party disputes that New York law applies. *See Liberty Surplus Ins. Corp. v. Segal Co.*, 142 F. App'x 511, 513 (2d Cir. 2005); *Ulrich v. Moody's Corp.*, No. 13-CV-0008(VSB)(MHD), 2014 WL 12776746, at *9–10 (S.D.N.Y. Mar. 31, 2014).

Plaintiff claims that Defendants Board and Sayegh breached the Agreement and the implied covenant of good faith and fair dealing by constructively discharging Plaintiff in bad faith and depriving him of proper notice or a hearing. (Compl. ¶¶ 119–22.)

To state a claim for breach of contract, a party must allege: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach of the contract by the other party; and (4) damages as a result of the breach. *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998). Initial interpretation of a contract is a matter of law for a court to decide. *K. Bell & Assocs. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996). However, at the motion to dismiss stage, a court "must resolve all ambiguities in the contract in Plaintiffs' favor." *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010); *see Wurtsbaugh v. Banc of Am. Sec. LLC*, No. 05-CV-6220(DLC), 2006 WL 1683416, at *5 (S.D.N.Y. June 20, 2006) (stating that if a claim for contract breach involves an ambiguous contract provision, the claim cannot be dismissed for failure to state a claim). Implied in every contract under New York law, "[t]he covenant of good faith and fair dealing . . . includes an implied undertaking on the part of each party that he will not *intentionally and purposely* do anything to prevent the other party from carrying out the agreement on his part." *Kader v. Paper Software, Inc.*, 111 F.3d 337, 342 (2d Cir. 1997) (quoting *Carvel Corp. v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228, 230 (2d Cir.1991)) (internal quotation marks omitted) (emphasis in original).

Plaintiff's Complaint contains factual allegations sufficient to support a facially plausible breach of contract claim against Defendants Board and Saygeh. The Agreement is a contract,[2] at least one party, Plaintiff, performed under the Agreement, and Plaintiff suffered damages, which

---

[2] Parties do not dispute the existence of a contract. (Defs. Board & Sayegh Mot. to Dismiss pp. 5–7, *see generally* Def. Spano Mot. to Dismiss); *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 165 (S.D.N.Y. 2014) (granting the defendant's motion to dismiss and noting that the existence of a contract was not in dispute).

include lost salary from the remainder of the term established in the Agreement. (Compl. ¶¶ 43–48, 82, 88.). Additionally, according to Plaintiff, Defendants breached the Agreement through constructively discharging him in bad faith from his position before the expiration of the contract and, after he was discharged, by failing to provide him a hearing or the required written notice. (*Id.* ¶¶ 44, 121–22.) "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Terry v. Ashcroft,* 336 F.3d 128, 151–52 (2d Cir. 2003); *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004). If a plaintiff cannot show specific intent, she must at least show that the employer's actions were deliberate and not simply negligent. *Petrosino,* 385 F.3d at 329. The intolerability of work conditions is an objective standard, and courts consider whether the working conditions were so intolerable that a reasonable person in the plaintiff's position would feel compelled to resign. *Id.* at 329–30. Accepting Plaintiff's allegations as true, his Complaint contains a facially plausible claim for constructive discharge. Defendant Sayegh, and Defendant Spano, told Plaintiff that if he did not resign from his position immediately, at the November 20, 2015 meeting, they would publicize that Plaintiff had viewed pornographic material in the workplace, which would have reasonably created an intolerable work atmosphere in the school district for Plaintiff. (Compl. ¶ 71.) Additionally, Plaintiff was also concerned about the effect on his family, should the allegations be publicized. (*Id.* ¶ 74.)

In addition to the constructive discharge claim, Plaintiff states a facially plausible claim that Defendants Board and Sayegh violated the covenant of good faith and fair dealing. Defendants knew that the Agreement was not set to terminate until June 30, 2016, yet, at the November 20, 2015 meeting, they prevented Plaintiff from performing the rest of the term of the Agreement in bad faith, "falsely accusing plaintiff, with no actual proof," and requiring him to

6

resign immediately or face public humiliation. (*Id.* ¶¶ 44, 70–73.) According to the Complaint, Defendants Board and Sayegh acted intentionally and purposefully. *Kader*, 111 F.3d at 342.

Accordingly, Plaintiff states a facially plausible claim for breach of contract and Defendants' motion to dismiss is denied.

## II. Slander per se

Plaintiff brings a slander per se claim against Defendants Spano and Sayegh, alleging that they told the media that plaintiff watched pornographic material at the office. (Compl. ¶ 127.)

Under New York law, a plaintiff must satisfy seven elements to establish a prima facie slander claim: "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001). The four traditional categories of slander per se include "statements that charge a plaintiff with a serious crime; that tend to injure a plaintiff in his or her trade, business or profession; that allege that plaintiff has a loathsome disease; or that impute unchastity to a woman." *Ruta v. Delta Airlines, Inc.*, 322 F. Supp.2d 391, 403 (S.D.N.Y. 2004). Public figures, including school superintendents,[3] "may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974).

Here, Plaintiff's Complaint, assuming the truth of the allegations as required under the motion to dismiss standard, includes sufficient facts to plausibly allege a slander per se claim.

---

[3] "[T]here is apparently universal agreement that public school superintendents . . . merit [public figure] designation." *Ghafur v. Bernstein*, 131 Cal.App. 4th 1230, 1238 (Cal. Ct. App. 2005); *see also Linton v. Streetsboro City Sch. Dist. Bd. of Educ.*, 162 F. App'x 532, 539 (6th Cir. 2006); *Collins v. Taos Bd. of Educ.*, 893 F. Supp. 2d 1193, 1203 – 04 (D. N.M. 2012).

7

Plaintiff alleges that there was a defamatory statement of fact, "that plaintiff had watched . . . [$2,300.00] worth of pornography on his computer at work and used a district credit card." (Compl. ¶ 79.) Plaintiff repeatedly asserts that the allegations are false and supports these assertions with examples of his cooperation in the investigation. (*Id.* ¶¶ 70, 78, 81–82.) The statements, concerning Plaintiff, were made to "various media outlets" and were repeated in the Herald tribune, the Herald Statesman, the Yonkers Tribune, and Cable News 12. (*Id.* ¶¶ 79–80.) Plaintiff's Complaint plausibly alleges that the statements were made with knowledge of their falsity, or at least with reckless disregard for their truth. (*Id.* ¶¶ 70, 78, 81–82.) In the November 17, 2015 call Plaintiff only informed Defendant Sayegh that he was being investigated, and at the meeting in Defendant Spano's office Plaintiff only agreed to the "constructive discharge"; he never said that he had actually purchased pornography using a district credit card and watched it on his computer at work. (*See id.* ¶¶ 61, 71, 77.) Plaintiff also sufficiently alleged slander per se, establishing a facially plausible claim that the statements injured Plaintiff in his profession, costing him at least one job offer and other future opportunities. Finally, the statements do not appear to be privileged. (*Id.* ¶¶ 82–87.)

Accordingly, Defendants' motions to dismiss Plaintiff's slander per se claims against Defendants Spano and Sayegh are denied.

### III. Tortious interference with a contract

According to Plaintiff, Defendant Spano interfered with his Agreement with Defendant Board and "intentionally procured the breach of the [Agreement]." (Compl. ¶ 139.)

In New York, to state a claim for tortious interference with a contract, a plaintiff must allege that (1) a contract exists; (2) the defendant was aware of the contract; (3) the defendant intentionally procured the third-party's breach of the contract without justification; (4) the

8

contract was actually breached; and (5) damages resulted. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006); *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 721 (S.D.N.Y. 2014). "To be actionable, the interference must be improper, a determination of which depends on the particular factual situation." *Ray Legal Consulting Grp.*, 37 F. Supp. 3d at 721. To determine whether interference is improper, courts consider the nature of the interfering conduct, the interest of the party being interfered with, and the relationship between the parties. *Guard-Life v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 190 (1980). Additionally, a plaintiff must demonstrate that the third party would not have breached the contract but for the activities of the defendant. *Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 683 (S.D.N.Y. 2017); *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 450 (S.D.N.Y. 2014).

Here, Plaintiff plausibly alleges a tortious interference with a contract claim. The Agreement was a contract and Defendant Spano was aware of the Agreement. Plaintiff's Complaint also contains sufficient facts to support a facially plausible claim for the third element, that Defendant Spano intentionally procured the third-party's breach of the contract without justification. Plaintiff alleges that Defendant Spano "[had Plaintiff] wrongfully removed from his position so that he could appoint a member of the Hispanic community to the position."[4] (Compl. ¶ 94.) Defendant Spano summoned Plaintiff to his office for the November 20, 2015 meeting and, together with Defendant Sayegh, told Plaintiff that if he did not resign before the end of the contract term, Defendant Spano would approach and inform the media of the false allegations that Plaintiff purchased and viewed pornographic material at work. (*Id.* ¶ 61–70.) As discussed *supra*, the contract was actually breached when Plaintiff was

---

[4] Plaintiff also notes that the police officer who informed Plaintiff of the investigation did so "under the direction of Spano." (Compl. ¶ 50.)

9

constructively discharged, and he suffered damages which include lost salary. (*Id.* ¶¶ 43–48, 82, 88, 121–22.)

Accordingly, because Plaintiff stated a facially plausible claim, Defendant Spano's motion to dismiss Plaintiff's tortious interference with a contract claim is denied.

## IV.  Discrimination based on national origin

Plaintiff alleges that Defendant Spano is liable under 42 U.S.C. § 1983 for discriminating against him based on his national origin in violation of the Fourteenth Amendment's Equal Protection Clause. (Compl. ¶¶ 105–10.)

Public employees, such as Plaintiff, may bring suit under § 1983 to vindicate their right to be free from discrimination under the Fourteenth Amendment. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015). To state a claim under § 1983, a plaintiff must allege that "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of N.Y.*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) ("[Section 1983] furnishes a cause of action for the violation of federal rights created by the Constitution."). Once the "color of law" requirement is satisfied, a court may apply the same analysis used in Title VII to a plaintiff's equal protection claim.[5] *Vega*, 801 F.3d at 87 – 88.

A plaintiff establishes a claim for national origin discrimination under Title VII by demonstrating that "national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m). To establish a prima

---

[5] Unlike Title VII, however, a § 1983 equal protection claim can be brought against an individual. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015).

10

facie discrimination claim, a plaintiff must demonstrate that he (1) is within the protected class; (2) was qualified for his employment position; (3) was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *United States v. Brennan,* 650 F.3d 65, 93 (2d Cir.2011). Plaintiffs must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega,* 801 F.3d at 85 (quoting *Littlejohn v. New York,* 795 F.3d 297, 310 (2d Cir. 2015)) (internal quotation marks omitted). While "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, [ ] it must nevertheless comply with the plausibility standard set forth in *Twombly* and *Iqbal.*" *Chung v. City Univ. of N.Y.,* 605 F. App'x 20, 21–22 (2d Cir. 2015) (quoting *E.E.O.C. v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 254 (2d Cir. 2014)) (internal quotation mark omitted) (citations omitted). Notably, Title VII prohibits discrimination by *employers.* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to . . . national origin.") (emphasis added).

Plaintiff's Complaint fails to state a facially plausible claim for national origin discrimination against Defendant Spano because Defendant Spano was not Plaintiff's employer. Plaintiff sufficiently pleads that he is within a protected class, person of Italian origin, and was qualified for the superintendent position. (Compl. ¶ 8, 48, 91.) However, Plaintiff was not Defendant Spano's employee. To determine whether plaintiffs are employees under Title VII, the Second Circuit requires that plaintiffs show that they were hired by the alleged employer and, if plaintiffs satisfy this requirement, courts consider thirteen factors:

> [1] the hiring party's right to control the manner and means by which the product is accomplished ... [;][2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects

11

to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; and [13] the tax treatment of the hired party.

*Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989)). According to the face of Plaintiff's Complaint, he was hired by Defendant Board, not Defendant Spano; Defendant Spano is not associated with the creation of or the terms of the Agreement. (Compl. ¶¶ 43–44.) Plaintiff entered into the Agreement with Defendant Board which defined the terms of his employment. (*Id.*) Even assuming that Defendant Spano did hire Plaintiff, Plaintiff was not Defendant's employee under the thirteen factors listed above. *See Eisenberg*, 237 F.3d at 114. According to the face of Plaintiff's Complaint, Defendant Board, not Defendant Spano had control over the duration of Plaintiff's employment and Plaintiff's salary, and Defendant Board, not Defendant Spano, is focused on the business of education, Plaintiff's line of work, while Defendant Spano as mayor is focused on a variety of municipal concerns.[6] (*Id.* ¶ 44.) Because Plaintiff's Complaint fails to plausibly allege that Defendant Spano was Plaintiff's employer,[7] Plaintiff's national origin discrimination claim against Defendant Spano is dismissed.

---

[6] Additionally, according to New York statute, superintendents are subject to the board of education and the terms or provisions of employment contracts between them and the board of education. *See* N.Y. Educ. Law § 2565.

[7] Even if Plaintiff had been Defendant Spano's employee, Plaintiff would still need to establish a facially plausible claim that he was subject to an adverse employment action and that the adverse action occurred under circumstances giving rise to an inference of discrimination. As discussed *supra*, Plaintiff plausibly alleged that he was constructively discharged from his employment, an adverse employment action. *See Fitzgerald v. Henderson*, 251 F.3d 345, 357–58 (2d Cir. 2001). However, it is unclear whether Plaintiff sufficiently established an inference of discrimination. A prima facie case for an inference of discrimination may be made by demonstrating that a similarly situated individual not in the plaintiff's protected group was treated differently. *Cabrera v. NYC*, 436 F. Supp. 2d 635, 644 (S.D.N.Y. 2006). It is unclear whether Plaintiff's Complaint included sufficient facts to establish that Quezada, the individual who replaced Plaintiff as superintendent, qualified as similarly situated. (Compl. ¶¶ 89–92.) Because Plaintiff was not Defendant Spano's employee, the Court need not address this element.

## CONCLUSION

For the foregoing reasons, Defendant Spano's motion to dismiss is GRANTED in part and DENIED in part. Defendant Spano's motion to dismiss Plaintiff's national origin discrimination claim is granted and the claim is dismissed without prejudice. Defendant Spano's motion to dismiss Plaintiff's tortious interference with a contract and slander per se claims are denied. Defendants Board's and Sayegh's motion to dismiss is DENIED.

The Clerk of the Court is respectfully directed to terminate the motion at ECF Nos. 29 and 35. Plaintiff is granted leave to re-plead in conformity with this Opinion by October 15, 2018. Defendants are directed to file answers to Plaintiff's remaining claims on or before November 5, 2018. This constitutes the Court's Opinion and Order.

Dated: September 24, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge